I'm Theodore Parker. I'm here on behalf of the appellant, Richardson Construction Company. Let me say first it's a pleasure and honor to be back before this Court again. I should just for clarity mention that the first case that's shown with CLASA v. SN Servicing has been subpoenaed on the base, and therefore the first case is Richardson Construction. Go ahead. Thank you very much, Judge Hunt. As I was saying, I'm Theodore Parker on behalf of Richardson Construction Company, the appellant in this matter. I'd like to start out by giving a brief factual background under which the Court has dismissed Richardson's complaint in this action. Richardson Construction Company started in Las Vegas in approximately 1978. He started as a very small general contractor doing mostly renovations. He took that small minority-owned business from doing $1,000 projects to doing projects in excess of $8 million and $9 million at a time, primarily focusing on public works projects. Mr. Richardson, as a minority and the sole owner of Richardson Construction Company, had no business relationships when he came to Las Vegas and believed public works projects would be the best opportunity for his company to grow. Knowing that public works projects depend completely on competitive bidding, he didn't believe not knowing anyone in Las Vegas would be a disadvantage. In fact, he also believed that being a minority would not be a disadvantage because the process is strictly competitive. From 1978 to 1999, that's exactly what he focused on, primarily public works projects and submitting bids to public owners. The Clark County School District, the appellee in this action, is just such a public owner. From 1978 to 1999, Richardson and the Clark County School District had a fairly good relationship. Richardson was averaging somewhere between $10 million a year, or in excess of that amount, for the last several years of its business relationship with the Clark County School District. Unfortunately, just before 1999, the Clark County School District's construction department changed. The face of those governing that body of people changed. As a result, Richardson became – Before the date of that, I thought it was earlier than that, that Mr. Dales came. That's right. I'm sorry, it's Michael Dale. McHale Dale is actually M-I-K-E-L-L, McHale Dale. He became the director of modernization. On what date? That was in – it's not brief, but it was in 1998, I believe. Oh, I was thinking it was 89, but – If it was in 89, he was not the director at that time. He came to the school district but was not in a supervisory capacity when he first came there. In fact, he began working – when he began working there, he was working under the direction of Lane Swainston. Lane Swainston was the director at that time. And, in fact, we have used him as an expert in cases against the Clark County School District. So that's the difference in terms of when he ascended to the position of director of modernization. That's McHale Dale. Frederick Smith was the director of construction management, McHale Dale's supervisor. And Charles McCrary was the new construction department head. So that's the hierarchy in terms of the Clark County School District's construction department. Once McHale Dale took charge, things became a lot more difficult for Richardson Construction Company. They failed to pay Richardson Construction Company on several million-dollar projects. As a result, in 1998, 1999, our firm, on behalf of Richardson Construction Company, filed several lawsuits. We were able to prevail on the majority of those lawsuits through either AAA arbitrations, through Nevada mandatory arbitration process, through jury trials, and the like. Cases that were not handled all the way through a ward were settled in our client's favor. You know, almost half of your time has expired. I would suggest we get to the issues that you feel are important, which seems to me to be a statute of limitations. Of course. Our briefs, the opening brief, the answering brief, and our reply brief, all start with whether or not the notice pleading requirement under FRCP 8A was met. We believe in compliance with Meduca and Miranda, both cases coming out of the Nevada Federal District Court, we believe we met that requirement. There is no heightened requirement for 1983 actions, and we believe we met that requirement under those cases. In 1999, we submitted our prequalification package to the Clark County School District. Well, I guess my question, and I think I better direct it, is that there's a two-year statute of limitations for both Section 1983 and 1985. And it appears to me that Richson knew of the or should have had reason to know of the basis for the court's action in December of 1999. And the suit was filed June 18th of 2003, a year and a half beyond the statute. What's your response to that? Let me be very clear with that, Your Honor. The ‑‑ we were informed, Richardson was informed by the Clark County School District that it would not be allowed to bid on any of its projects while there was litigation pending because they believed we breached the contracts with them. When did it first receive that information? That originally came in 1999, 2000. But then it ‑‑ so we continued with the lawsuits and prevailed. And so after prevailing, we informed them, we've prevailed in these cases. Will you now allow us to bid on your projects? In 2002, 2001, we received different comments from different people within the CCSD, Clark County School District hierarchy, including the general counsel, telling us, although you've prevailed here, because you still have litigation going, we're not going to allow you to prequalify. Now, this happened in 2001 and 2002. And we also, within our complaint, set out every date beyond 2002 and 2003, because these other cases that I started providing information to the court on were ongoing. And as we continued resolving them in our favor, we said, we don't believe that you can still hold this over our head and not allow us to bid. So that's why the two‑year statute of limitations does not apply. It certainly is a continuing violation that's seen in the cases we've already cited to in our briefs. Because we received notices in 2002, 2001, 2003. After we won a case, we'd ask, is it now? Is it time that we can now begin bidding again on your projects? And again, in 2002, we were informed, no, you still cannot. And so when we, after we'd won every case and went to them asking, can we now bid on your projects? When they said no, and we'd won every case, we immediately filed in federal district court. The only other case that was remaining was just a subcontractor claim. But we prevailed in every case. So that's when the statute of limitations should have started, after we prevailed and they gave us their final decision that they were not allowing us to prebid. That's when it should start. Not 1999, when we first were told. Because we still had several cases that we had not had any determinations on. I failed, and I was remiss not to ask for time to respond. Yeah, you have about a minute and a half, if you want to reserve that, that's fine. I sure would like to. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Scott Greenberg. I'm an assistant general counsel for the Clark County School District in Las Vegas, who prevailed on the motion to dismiss, several motions to dismiss below. What I'd like to point out, first of all, obviously being a motion to dismiss, we're here on the pleadings, and I think a number of things that the plaintiff, plaintiff's counsel just set forth for you, are clearly not in the complaint, and in fact contradict the complaint. First of all, in regards to your question about Mr. Dale, the complaint specifically states in paragraph 11, this is the third amended complaint, that he was hired in 1989 as the point man for these projects, and it was right after that that supposedly everything started changing in this construction. So we're talking nearly 10 years before 1999, which is their last prequalification attempt, and then obviously 14 years before June of 2003, when this case was actually filed. The order of the district court dismisses this case on two grounds, one of which is a statute of limitations, but the order doesn't really say when Judge Jones determined that the statute started running. Well, I think if you look at his original order, which I think is document 45, which is following the second. There was a complaint, motions to dismiss, first amended complaint, mooted those, another set, and then I think that's his first order, which is number 45. He clearly states in there that 1999 is when the statute of limitations began. And you must remember, Your Honors, this is not a case where the plaintiff is alleging that somehow they were not aware of what was going on. Clearly in the complaint, I think it's paragraph 16, they say that their package was denied in 1999, and they specifically allege in December of 99 that they are told that that's because of these ongoing cases. Clearly at that time, they had all the facts about their alleged injury and could have brought suit. The court below clearly held in that first order that that started the statute of limitations, which was being two years, taking you to obviously 2001. This case was not filed until 2003. Then what happened was, and as you can see from the complaints, these claims changed miraculously throughout these complaints and also the oppositions to the motion to dismiss. Then all of a sudden, while plaintiffs continued to argue, well, we think the statute of limitations continues under old Ninth Circuit case law before the Supreme Court's Amtrak case, they then started throwing in, and actually I would tell you that it was the judge who threw this in at one of the oral arguments. He said, well, what about futility? And plaintiff, as I'm sure any lawyer would, jumped on that and said, oh, yes, we think it was futile because we were told that we wouldn't be able to bid on these or wouldn't get these projects. Now, what Mr. Parker had just alluded to in his argument, he says that Richardson Construction waited until essentially these ongoing cases had ended and then came to, I think his statement was, and then came to the district to say, okay, can we now bid on these? You will find nothing like that in the complaint or alleged anywhere. In fact, all the allegations in this complaint you will find, and I think this is paragraphs 16 and 18, have to do with, and they specifically say, pretrial conferences and settlement conferences in these other cases where plaintiff claims somehow the issue of other projects or can we bid on other things came up. And I would tell you that probably is normal course. There were some discussions to try to settle, like globally, what would happen with all these cases, as many parties do. And Richardson Construction was always continually throwing in, well, can't we now just start bidding? And so this was a mix in the settlement discussions of all these cases. And so what happened was then, they filed this. Why isn't this a continuing violation? Well, because nothing ever, ever happened. Under Amtrak, you have to have discrete acts. After 1999, the plaintiff did nothing to ask for to be prequalified or construction bids. Mr. Parker kind of implied that, well, we went to the school district to try to get that, suggesting that somehow there were discussions about prequalification, you know, in the normal application process. Nothing of like that happened. And I think that's where all the futility cases, and you really won't find many that actually go with the futility argument. You show the cases throwing these hypotheticals, the normal one being the poster over the door at the employment, you know, office that says whites only. Well, then you can turn around. Well, clearly, even in that situation, that would trigger the statute of limitations. You wouldn't be able to leave that employment office, wait four years, five years, whatever it may be, and say, okay, now I want to sue. They're trying to take futility and essentially use it to completely throw out any statute of limitations. Under their argument, they could wait five years, ten years, whatever it may be. They've never made any application. And that's where Matson comes in. Doesn't futility really pertain more to standing than it does to statute of limitations? Well, it does. And I think this case intertwined both of them to a certain extent. Because what happened was the judge clearly in the first order said, your case is out on a statute of limitations from 1999. Did you make that argument you just made now, did you make that same argument to the district court that, in other words, even if the plaintiff is depending on the futility, they still have to comply with the statute of limitations in the sense that a statute starts to run when you get notice that it would be fueled. That's essentially your argument, right? Right. And they were both in there. Did you make that argument to the district court? Yes. I think they're all in the motion to dismiss both. Did you get any reaction from the judge? Well, I think that's what he did. I think he, in his last order, and it's not a long decision. I mean, this case had been on a motion to dismiss for three years. He'd written a couple decisions. He didn't put a long, lengthy opinion. But he talks about futility and statute of limitations. I think what the judge was doing clearly was this case had always been about lost profits. And that's kind of where the standing came in, that these injuries would be so speculative, so nebulous, that you couldn't be able to start to redress those. And so what the judge did below in the last order said, I believe, plaintiff is still saying lost profits. If you look in every brief, they say we have lost millions of dollars from every project we would have gotten, which would have been lost profits. In fact, even in his third brief, in the plaintiff's third brief before this court, where they try to inject northeastern Florida, which I hope I don't have to get into, as a new basis, even in that one, in the footnote one, they're still saying we can prove our damages of lost profits, either by our historical profits in these cases or because the law doesn't require certainty. They're still going with lost profits. That's always been their case. And that's why they have no standing, because that injury cannot be redressed at this time without those applications, which makes this case fall under Madsen. And so it was a mix of statute of limitations and also then plaintiff trying to go with futility to essentially take that statute of limitations from two years to forever. They were saying, well, every once in a while in these settlement conferences or pretrial conferences, the issue still comes up, so we must still be able to we shouldn't have had to file an application, because it would have been futile. So now we must be able to, to this day or any day, continue to do this. And our position has always been, at least in futility, that these, even the alleged comments, are so far removed from either the application process or the people in control. That's not the district. What some lawyer or some client representative may say at a other litigation pending before a court or a settlement conference to then use that and say, well, that's why we didn't go apply, I think, has stretched any case that anybody could ever cite to this court well beyond legal principles. I would note that there is a cross-appeal. It is obviously intertwined with the substance of plaintiff's appeal, because it's an attorney's fee motion. I would just point out that the plaintiff did not contest the reasonableness of the fees. It's just whether the case met the Christiansburg standard or not. Finally, we had done a motion to strike, which we thought the panel would consider. It looks like it was denied. I would just bring that up while there's been no questions about the northeastern line of cases, as set forth in our motion to strike. That is a completely distinct theory of standing. It has nothing to do with futility. It has nothing to do with the claim plaintiff originally brought, which was for lost profit. And to allow a plaintiff to go through three sets of motions to dismiss, an opening brief, never say anything about it, and then throw it in a little bit in his third brief, hadn't raised it in the court of appeal, hadn't even stated it as an issue either in the docking statement or the opening brief, and to even consider that issue, I believe would be against the Federal Rule 28. All right. Thank you, Your Honors. I'd like to start with the appellee's reference to the Madsen case. I believe the Madsen case has no application here. In Madsen, the request for a free handicap parking space was never made. It never applied for the permit. Here we actually made the application. We requested it through the prequalification process and were denied. And again, informed. When was that? That first one was in 1999, the prequalification. And then, again, in 2001 and 2002, and all those dates are referenced in the complaint. The complaint is very specific in terms of when we were informed. And very similar to the Serrano case, we were informed telephonically even after that by Chuck McQuarrie, which is pointed out in our complaint, that we would never be allowed to bid on those projects while we had litigation going forward. Of course, access to courts. When were you informed of that? That was later in 2000. And when in 2000? I don't know if we have that date that specific. It was in the beginning of 2000 because it came on the ear, on the tail of that prequalification process for the 2000 year. Now, the 2001, 2002 events are all, of course, documented in the complaint. And Appellee, of course, is trying to escape the Northeastern case because it says on its face, you don't have to prove that you would have been successful in competitive bids, just that you were prevented from taking part and participating in those bids. And that's where our damage claim comes from. And that's the decision that the district court made. It made a decision that we do not have the ability to satisfy the damages portion.  Thank you, Counsel. Thank you very much. The case that's heard will be submitted. And we'll proceed to the next case on the calendar. We have one case that's submitted on the Brave Sobel v. Stewart. And so the next case is Ivan with Sobel v. Gonzalez.
judges: Hug, Tashima. Gould